IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| SARAH ELIZABETH SPIERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 5:23-CV-06116-SJ-JAM-SSA |

## ORDER

Pending before the Court is Plaintiff's appeal of the Commissioner of Social Security's decision denying her application for disability benefits. Plaintiff has exhausted her administrative remedies, and the matter is now ripe for judicial review. The Court reviews the Commissioner's final decision pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth below, the Commissioner's decision is **REMANDED**.

### I. BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and thoroughly briefed by the parties, so they are not fully repeated here. Plaintiff filed her brief before this Court asserting issues with the ALJ's treatment of three medical opinions relevant to the mental component of the residual functional capacity (RFC), and the Commissioner filed its brief in response. (Docs. 10, 15) Oral arguments were presented by the parties, after which the Court took the matter under advisement. (*See* Docs. 20, 21)

The ALJ determined that Plaintiff had several severe impairments, and, after concluding that those impairments did not meet or equal a listed impairment, the ALJ determined Plaintiff's RFC, in relevant part:

> The claimant can understand, remember, and carry out detailed but not complex instructions for simple, routine, repetitive tasks. The claimant can make simple, work-related decisions in a routine environment with no more than occasional changes in the work duties. The claimant should have no interaction with the public as part of the job duties. The claimant can tolerate no more than frequent and superficial interaction with co-workers and should not be required to perform close work on a team.

(Tr. 23)

Plaintiff's treating psychiatrist, Rubin Moore, M.D., completed a Medical Source Statement on March 9, 2022, diagnosing Plaintiff with bipolar I disorder, PTSD, generalized anxiety disorder, and borderline personality disorder. (Tr. 1262-1263) Dr. Moore opined that Plaintiff would likely be off task about 20% of the workday and miss work approximately four days per month due to her conditions. (Tr. 1262) His assessment included two marked limitations, eight moderate limitations, and ten mild limitations, with moderate limitations defined as a "30% overall reduction in performance." (Tr. 1262-1263)

On March 16, 2021, State Agency consultant Paul Midden, Ph.D., evaluated Plaintiff's mental impairments and found moderate limitations in all four "paragraph B" criteria. (Tr. at 166) He concluded that while Plaintiff could follow two-step instructions, she would struggle with more complex and detailed instructions. (Tr. 166) In a subsequent evaluation on July 1, 2021, State Agency consultant Linda Skolnick, Psy.D., concurred with Dr. Midden's findings but added that Plaintiff could only adapt to predictable changes introduced gradually. (Tr. 174-181)

In assessing the opinion of Dr. Moore, the ALJ found his evaluation of moderate limitations persuasive, supported, and consistent with the record but rejected his conclusions regarding marked limitations. (Tr. 29-30) The ALJ found the opinions of Drs. Skolnick and Midden unpersuasive, particularly their conclusion that Plaintiff was limited to one- or two-step instructions, as this was inconsistent with both their moderate findings and the broader record,

including Plaintiff's reported activities.  (Tr. 28)

Ultimately, the ALJ determined that while Plaintiff could not perform any of her past relevant work, there were jobs in significant numbers in the national economy that she could perform, including document preparer, circuit board assembler, and packager.  (Tr. 29)

## II.    PARTIES' ARGUMENTS

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 416.920c and SSR 96-8p by improperly evaluating the medical opinions of Dr. Moore, Dr. Midden, and Dr. Skolnick as related to the ALJ's mental RFC determination.  The Commissioner maintains that the RFC is supported by substantial evidence, asserting that no reversible legal error was committed in the consideration of any of the three medical opinions at issue.

## III.    STANDARD OF REVIEW

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole."  *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016).  "Substantial evidence is less than a preponderance of evidence but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion."  *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).  The Court must consider evidence that both supports and detracts from the ALJ's decision.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  Even if the record could support a contrary outcome, the Court must affirm the ALJ's decision if it is supported by substantial evidence.  *See KKC ex rel. Stoner v. Astrue*, 618 F.3d 810, 820 (8th Cir. 2010).

## IV. LEGAL ANALYSIS

The Court will first address the ALJ's evaluation of Dr. Moore's opinion and then turn to the ALJ's assessment of the opinions of Drs. Midden and Skolnick.

**A. Dr. Moore's Opinion**

Plaintiff challenges the RFC determination, asserting that the ALJ failed to resolve a material inconsistency between the RFC and the opinion of Plaintiff's treating psychiatrist, Dr. Moore. Specifically, Plaintiff contends that although the ALJ found Dr. Moore's assessment of Plaintiff's moderate limitations persuasive, the ALJ omitted from the RFC, without explanation, the moderate limitation concerning Plaintiff's ability to accept instruction and respond appropriately to criticism from supervision—an omission that necessitates remand.[1]

Under SSR 96-8p, the ALJ must resolve any material inconsistencies or ambiguities in the record when formulating the RFC, which must be based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); SSR 96-8P (S.S.A. July 2, 1996). In the written decision, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p. Additionally, "if the RFC conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

---

[1] During oral argument, Plaintiff's Counsel asserted that the omission of a limitation on Plaintiff's supervisory interactions from the RFC was the strongest argument on appeal, describing it as "fatal" to the case. (Doc. 21 pp. 10-11) While Plaintiff also contends that the ALJ's RFC failed to account for Dr. Moore's moderate limitations in handling detailed instructions, maintaining attention, and interacting with co-workers, the Court finds substantial evidence supports the ALJ's RFC as to these arguments. For example, the RFC restricts Plaintiff to "detailed but not complex instructions" for "simple, routine, repetitive tasks." (Tr. 23, 1263) Concerning co-worker interaction, the RFC restricts public interaction, limits co-worker interactions to superficial levels, and precludes Plaintiff from performing close team work. (Tr. 23, 1263)

When an ALJ finds a medical opinion persuasive, supported by, and consistent with the record, any limitations within must be incorporated into the RFC or, if omitted, the material inconsistency it creates must be explained. *See* SSR 96-8p; *Gann v. Barnhart*, 864 F.3d 947, 952-953 (8th Cir. 2017); *Batson v. Kijakazi*, No. 6-20-03251-CV-S-WBG, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022); *Stafford v. Kijakazi*, No. 4:20-CV-1011-NKL, 2022 WL 358061, at *3 (W.D. Mo. Feb. 7, 2022). While the ALJ is not required to "mechanically list and reject every possible limitation," the ALJ cannot "disregard evidence or ignore potential limitations." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Moreover, "[w]hen an ALJ's assessment of medical sources directly conflicts with the claimant's RFC and the ALJ fails to explain that conflict, a limited remand may be appropriate for clarification if the error appears to have impacted the outcome." *Hickert v. Kijakazi*, No. 4:21-CV-00425-DGK, 2022 WL 2966882, at *2 (W.D. Mo. July 27, 2022) (collecting cases). Failing to address material inconsistencies or provide adequate explanation for an omission constitutes reversible error under SSR 96-8p. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008); *Stafford,* 2022 WL 358061, at *3; *Holdeman v. Kijakazi*, No. 4:21-CV-06103-NKL, 2021 WL 6062368, at *8 (W.D. Mo. Dec. 21, 2021); *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *4 (W.D. Mo. Feb. 9, 2021).

In her written decision, the ALJ summarized Dr. Moore's opinion, and credited certain portions yet rejected others. (Tr. 29-30) The ALJ specifically discounted the conclusions regarding marked limitations, absenteeism, and off-task behavior. (Tr. 29) However, the ALJ found Dr. Moore's moderate limitations persuasive, noting they were "supported and consistent with the record." (Tr. 29, citing "Ex. C4E; C6E; C11F/10-17; C14F/2-3; C19F/23, 47, 62; C20F/6-7; Hearing Testimony" which correspond to Plaintiff's Function Report; attorney-supplied evidence; treatment records from Northwest Health Services; treatment records from Kansas City

5

Psychiatric Group; therapy records; and treatment records from Kansas City Psychiatric Group). Among these limitations was Plaintiff's moderate limitation in accepting instruction and responding appropriately to criticism from supervisors. In fact, the ALJ explicitly referenced this limitation in the written decision: " He [Dr. Moore] concluded she would be moderately impaired in her ability to accept instruction and respond appropriately to criticism from supervisors… . (Ex. C22F.)" (Tr. 29) Nevertheless, the ALJ failed to incorporate any corresponding limitation related to supervisor interaction in the RFC or provide any explanation for its exclusion and the material inconsistency it created. (Compare Tr. 23 with Tr. 1262-1263)[2] The ALJ's omission of a specific limitation for supervisor interaction, despite finding Dr. Moore's assessment of a moderate limitation in this area persuasive, constitutes reversible error.

The Commissioner argues that the limitation regarding instructions and interactions with co-workers adequately addressed Plaintiff's limitation related to accepting instruction and criticism from supervisors This argument is not convincing. These two areas of limitation—handling appropriately instructions and criticism from supervisors and interacting with co-workers—are distinct, and an ALJ must address limitations in supervisory interaction specifically, rather than relying on co-worker interaction limitations alone. *See Porter v. Berryhill*, No. 4:17-CV-00072-NKL, 2018 WL 1183400, at *11 (W.D. Mo. Mar. 7, 2018) (finding the RFC inadequate because it failed to "incorporate a restriction on [the claimant's] ability to interact with supervisors."); *see also Cook v. Kijakazi,* No. 3:22-CV-05023-WJE, 2022 WL 4117028, at *3 (W.D. Mo. Sept. 9, 2022); *Alhilfy,* 2021 WL 462122, at *3. Social Security Administration guidance further supports this distinction. *See e.g.*, SSA Program Operations Manual System

---

[2]Although Dr. Midden indicated that Plaintiff could handle all levels of supervision, the ALJ found this opinion unpersuasive, at least in part. (Tr. 28, citing "Ex. C4E; C6E; Hearing Testimony.")

(POMS), DI 25020.010 (Mental Limitations) (specifying that the ability to accept instructions and respond appropriately to criticism from supervisors is a distinct mental ability critical for job performance, differing from the capacity to interact with coworkers; supervisor interactions are hierarchical and directive, directly impacting performance, whereas co-worker interactions are typically routine and non-directive); SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) (clarifying that limitations with supervisors may more significantly restrict employability than limitations with coworkers).

If the inconsistency between Dr. Moore's opinion and the RFC were resolved in favor of including the additional limitation, the outcome may change. *See Hickert,* 2022 WL 2966882, at \*2; *Alhilfy*, 2021 WL 462122, at \*3. To be sure, when Plaintiff's Counsel included Dr. Moore's omitted moderate limitation in a hypothetical to the vocational expert, the vocational expert testified that such a restriction would be work preclusive. (Tr. 90) The ALJ's exclusion of this limitation from the RFC without explanation requires remand. On remand, the ALJ must address Dr. Moore's moderate limitation in Plaintiff's ability to accept instructions and respond to criticism from supervisors, and either incorporate it into the RFC, if warranted, and address any further development of the record needed, or explain why the RFC deviates from the persuasive medical opinion in that regard. *See McCadney*, 519 F.3d at 767.

### B. Opinions of Drs. Midden and Skolnick

Plaintiff next challenges the ALJ's evaluation of the medical opinions provided by Drs. Midden and Skolnick, arguing that the ALJ failed to perform the multi-factor analysis required under 20 C.F.R. § 416.920c and thus improperly deemed the opinions unpersuasive. Plaintiff asserts that the ALJ's reasoning was either vague and conclusory or relied on mischaracterizations of evidence in the record to support a functional capacity beyond the limitations recommended by

7

these doctors. Additionally, Plaintiff argues that the ALJ should have restricted her to jobs requiring Reasoning Level 1, based on the doctors' recommendation of a two-step command limitation.

Dr. Midden assessed Plaintiff in March 2021 (Tr. 154-156, 162-166), while Dr. Skolnick conducted an evaluation at the reconsideration stage in July 2021 (Tr. 174-176, 180-181). Both doctors opined that Plaintiff had moderate limitations in mental functioning. (Tr. 166, 181) They concluded Plaintiff could perform two-step commands with adequate persistence and pace but would struggle with complex or detailed instructions and could manage only brief, superficial social interactions. (Tr. 166, 181) Dr. Skolnick additionally noted limitations in Plaintiff's ability to accept supervision and adapt to workplace changes. (Tr. 181)

In evaluating the persuasiveness of medical opinions for claims filed since March 27, 2017, the ALJ is to consider certain factors, the most important of these being supportability and consistency. 20 C.F.R. §§ 404.1520c and 416.920c. Supportability refers to how a medical opinion is supported by relevant objective medical evidence and the medical provider's explanations, while consistency measures how the opinion aligns with evidence from other medical and nonmedical sources in the record. *See* 20 C.F.R. §§ 416.920c(c)(1)-(2). The ALJ must explain how these two factors were considered when evaluating the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(b)(2); accord 20 C.F.R. § 416.920c(b)(2). Additionally, when evaluating findings on the persuasiveness of medical opinions, a reviewing court may assess the ALJ's decision as a whole. *See Wiese v. Astrue*, 552 F.3d 728, 733-734 (8th Cir. 2009) (affirming that an ALJ's findings may be "apparent from the opinion's entirety," and it is not necessary to focus on one specific portion of the opinion in isolation).

8

The ALJ found the opinions of Drs. Skolnick and Midden unpersuasive, explaining that while the doctors' findings of moderate impairments in all functional domains were supported by the record, their conclusion that Plaintiff was limited to performing only one- or two-step instructions was inconsistent with the level of impairment they had identified. (Tr. 28) The ALJ further opined: "[m]oreover, the claimant's own reports of her activities of daily living, including attending college classes, researching projects online, driving daily, preparing full meals, and following written instructions well is not consistent with a limitation to one- or two-step commands. (Ex. C4E; C6E; Hearing Testimony.)"[3] (Tr. 28) While Plaintiff argues that the ALJ's summary statement was vague and conclusory, and thus reflected "boilerplate or blanket statements" that failed to provide a thorough analysis of the supportability and consistency of the opinions, this argument is belied by substantial evidence and detailed support for the ALJ's assessment elsewhere in the decision.

In evaluating the opinions of Drs. Skolnick and Midden, the ALJ applied the factors of supportability and consistency, as required by 20 C.F.R. §§ 404.1520c and 416.920c. The ALJ determined that the opinions of Drs. Midden and Skolnick, which limited Plaintiff to performing only one- or two-step instructions, were unpersuasive. (Tr. 28, 166, 181) The ALJ's conclusion regarding these opinions was based on their lack of support from the objective medical evidence, inconsistencies with the moderate limitations identified by the doctors in their own opinions, and contradictions with the record as a whole. (*See* Tr. 23, 28, 162-166, 180-181) Notably, as

---

[3]Exhibit C4E is Plaintiff's Function Report (Tr. 310-324), which provides a comprehensive overview of Plaintiff's daily life and capabilities. Exhibit C6E is the Attorney/Representative Supplied Evidence (Tr. 346-352), which details her mental health, her recent sobriety and her compliance with medication. In Exhibit C6E, Plaintiff described her summer activities, including taking care of her father, meeting with her probation officer, attending college classes, and preparing her house.

reflected in the RFC (Tr. 23), the ALJ generally adopted these doctors' assessments of Plaintiff's moderate functional limitations, including, for example, difficulties handling complex instructions and the need for limited interactions.  (*See* Tr. 28, 162-166, 180-181)

Regarding supportability, the ALJ noted that Plaintiff's memory, knowledge, and cognition were consistently normal.  (Tr. 27, 30)  These findings aligned with the broader objective medical evidence in the record, which documented fluent speech, logical thought processes, normal thought content, intact attention and concentration, and good insight and judgment.  (Tr. 162-166, 180-181, 548, 552-553, 742, 860, 1239-1247)  The ALJ observed that Plaintiff's mental-health symptoms, while present, did not require hospitalization or intensive outpatient services during the relevant period, reflecting a mostly conservative treatment regimen.  (Tr. 27, 29-30, 53-56, 61-63, 69-70, 310-314, 319, 822, 865-866, 1076, 1091, 1239-1247)  The ALJ's assessment of supportability, which led to the conclusion that Plaintiff's mental impairments were less restrictive than the two-step command limitation proposed by these two doctors, is supported by substantial evidence.

The ALJ also considered Plaintiff's daily activities in evaluating the consistency of the medical opinions provided by Drs. Midden and Skolnick.  Plaintiff contends that the ALJ mischaracterized her ability to engage in these activities, such as her ability to attend college classes, prepare meals, and drive.  However, the ALJ's conclusions align with the record as a whole and are supported by substantial evidence.

Contrary to Plaintiff's assertions, her ability to attend college classes was not mischaracterized.  The ALJ acknowledged that Plaintiff experienced challenges, noting Plaintiff struggled in her college classes and used a recorder to help compensate for her difficulties.  (Tr. 21)  However, the ALJ determined these challenges did not negate Plaintiff's broader ability to

10

sustain academic engagement during the relevant period. The ALJ cited evidence showing that, despite Plaintiff characterizing her coursework as "insane," she reported to her therapist in March 2021 that she was earning "high B's." (Tr. 20-22, 27, 29-30, 865-866 [Ex. C14F]) Later that year, Plaintiff also described her classes as "good so far." (Tr. 1091 [Ex. C19F], 1243 [Ex. C20F]) While Plaintiff requested deadline extensions and chose to take an "incomplete" grade in one of her courses (Tr. 1147 [Ex. C19F]), the record as a whole supports the ALJ's conclusion that Plaintiff maintained the ability to engage in cognitively demanding tasks, which ultimately contradicted the restrictive limitations to one- or two-step instructions.

Plaintiff also contends that the ALJ mischaracterized her statements in the Function Report [Ex. C4E] regarding her ability to follow instructions. In the report, Plaintiff stated that she could follow written instructions "really well" and parenthetically added that she could "keep referring back" if needed. (Tr. 315) Plaintiff argues that this reflects a qualification or need for accommodation, but the ALJ's interpretation of this statement as evidence of Plaintiff's competence in processing and executing written instructions is supported by substantial evidence. The ability to refer back to written instructions is an inherent benefit of that mode of communication and does not necessarily indicate a functional limitation. While Plaintiff stated she struggled with spoken instructions unless they were simple and acknowledged difficulties with memory and completing tasks (Tr. 315), the record as a whole includes evidence of Plaintiff's ability to perform activities requiring attention and planning, such as driving, attending college classes for a time, caregiving, and managing household tasks—all of which were inconsistent with the doctors' restrictive two-step command limitation. *See Hensley v. Barnhart*, 352 F.3d 353, 356-57 (8th Cir. 2003) (noting that a claimant's ability to understand and follow simple directions and complete tasks supports an ALJ's finding that a claimant is not as limited as alleged).

11

Moreover, the RFC here included restrictions tailored to Plaintiff's limitations, limiting her to carrying out detailed but not complex instructions for simple, routine, and repetitive tasks. (Tr. 23) The record as a whole provides substantial evidence supporting the ALJ's interpretation of Plaintiff's Function Report as indicative of Plaintiff's ability to process and execute instructions.

Plaintiff additionally argues that her ability to drive and prepare meals does not contradict the doctors' two-step command limitation, characterizing these activities as "self-directed" and performed at her own pace. This argument overlooks the broader significance of these activities within the context of Plaintiff's functional abilities. The ALJ's evaluation was not based on isolated activities but rather on a comprehensive assessment of Plaintiff's daily functioning as demonstrated by the record as a whole. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (stating that the ALJ's role is to resolve conflicts in evidence and evaluate the record as a whole). In addition to driving and meal preparation, the ALJ considered Plaintiff's ability to attend college classes, research projects online, provide caregiving for her father, and perform other cognitively demanding tasks. These activities collectively constitute substantial evidence supporting the ALJ's RFC assessment and decision to find the doctors' opinions unpersuasive. Courts have consistently affirmed that such activities reflect a level of functionality inconsistent with severe cognitive restrictions. *See Adamczyk v. Saul*, 817 F. App'x 287, 289, 291 (8th Cir. 2020) (finding that substantial evidence supported the ALJ's decision to discount the claimant's reports of severe symptoms, including depression, anxiety, and personality disorders, due to her ability to engage in activities such as driving, interacting with others, and completing tasks both inside and outside her home).

Plaintiff's allegations of mischaracterization focus narrowly on a few instances, such as her academic struggles or her reliance on written instructions. However, considering the record

as a whole, the ALJ's decision addressed the consistency between Plaintiff's reported activities and the medical opinions. The ALJ's task is to assess whether Plaintiff's reported limitations align with her demonstrated abilities, including tasks requiring cognitive engagement and sustained effort. *See Pearsall,* 274 F.3d at 1217. Here, the ALJ concluded that Plaintiff's activities, when viewed collectively, were inconsistent with the restrictive limitation to one- or two-step commands. (Tr. 28) Substantial evidence supports this conclusion, and the ALJ's analysis reflects a consideration of the record as a whole. Plaintiff's arguments to the contrary do not demonstrate error.

Plaintiff final argument asserts that the ALJ's exclusion of the two-step command limitation was not harmless. Plaintiff maintains that such a limitation is functionally equivalent to a Reasoning Level 1 restriction, as defined by the Dictionary of Occupational Titles (DOT), and that the jobs identified by the vocational expert—relied upon by the ALJ at step five—require Reasoning Levels 2 or 3. The Commissioner counters that Plaintiff's argument inaccurately conflates Reasoning Level with Specific Vocational Preparation Level and notes that Plaintiff's argument that a two-step command limitation should have been considered by the vocation expert reflects an "alternate reality" rather than an error in the ALJ's analysis.

The Court agrees with the Commissioner's position on this point. Determinative here is that the ALJ did <u>not</u> impose a limitation to two-step commands. The vocational expert's testimony was based on the limitations outlined in the RFC as determined by the ALJ. Substantial evidence supports the RFC determination in this regard, including Plaintiff's normal mental status examinations, her ability to engage in cognitively demanding activities such as attending college classes, and her capacity to manage household tasks and caregiving responsibilities.

Ultimately, the ALJ's exclusion of the two-step command limitation is supported by substantial evidence and Plaintiff's speculative argument fails to demonstrate reversible error. The vocational expert identified jobs that were consistent with Plaintiff's RFC, which is not limited to Reasoning Level 1. Remand is not warranted on this basis.

## V. CONCLUSION

For the reasons outlined above, the ALJ's decision is **REMANDED**. On remand, the ALJ must either incorporate Dr. Moore's moderate limitation in accepting and responding appropriately to criticism from supervision into the RFC, if warranted, or provide a clear explanation for its rejection. If the limitation is adopted, the ALJ must further develop the record as needed.

          /s/ *Jill A. Morris*
          JILL A. MORRIS
          UNITED STATES MAGISTRATE JUDGE